Statement of the case.

LUTHER FORE v. ALABAMA & VICKSBURG RAILWAY COMPANY.

[39 South. Rep., 493.]

1. TRIAL. *New trial. Peremptory instruction.*

A circuit judge may grant a new trial if the verdict be against the weight of the evidence; but he is warranted in granting either party a peremptory instruction only when the evidence favorable to the other, conceding it to be true, discloses no legal right in him or fails to maintain the issue in his favor.

2. SAME. *Concrete case.*

Under the facts of this case the question should have been submitted to the jury whether the plaintiff, a boy riding on a freight car, in charge of mules and other freights, was guilty of contributory negligence in alighting while the train was in motion in obedience to the order of the conductor.

FROM the circuit court of Scott county.

HON. JOHN R. ENOCHS, Judge.

Fore, the appellant, was plaintiff in the court below; the railway company, the appellee, was defendant there. From a judgment in defendant's favor, predicated of a peremptory instruction, the plaintiff appealed to the supreme court.

According to the testimony offered by the appellant, he was, on June 27, 1902, employed as a driver by Brown Bros., who had a contract to do some grading for the railway company, and on that day he boarded the local freight train of the appellee to go from Forest to Jackson. By direction of his foreman, plaintiff, with another member of his gang, Gaston, got into the car in which the mules, scrapers, tools, and feedstuff were being transported. They were discovered in this car by a brakeman, who ordered them to get out, and upon their refusal, called the conductor, who came to the car and repeated the order. Fore testified that he told the conductor that the foreman had his transportation in the caboose, to which the conductor replied that he could not ride in that car, with or without transportation, and

to get off and catch the caboose, at the same time signaling the engineer to slow up; that the train slowed up, but did not stop, the conductor ordering him to get off then, as the train was going as slow as it would ever go; that he and his companion got out of the car onto a flat car and swung off to the ground while the train was going "a little faster than a man could walk;" that he was only eighteen.years old, a country boy, and had never gotten on or off a moving train before; that in getting off he fell and injured his foot.    Gaston testified that he did not see Fore fall as he got off, but he did fall as he tried to catch the caboose; that he saw him get up and walk down the track after the train had passed.    The defendant pleaded, among other things, that plaintiff was guilty of contributory negligence in getting off the train while in motion and in attempting to catch the caboose as it passed him.    According to the testimony of the conductor, when he ordered appellant and his companion out of the car he signaled the engineer to stop.  Thereupon appellant said: "You need not stop; we can get off."    The train did stop, however, but not until after the boys had gotten off.    He did not tell them to catch the caboose as it passed, but only ordered them to get off that car; they could not ride there, with or without transportation; he did not see appellant get off or see him fall, but he did see him, after he got off, standing on the ground, and he did not appear to be injured.    He also testified that he afterwards found the foreman and Gaston in the caboose, but that appellant was not there; that they were without proper transportation, but when they informed him that they were in charge of the stock he permitted them to go as far as Morton, where he wired the superintendent for instructions and received a reply directing him to put them off unless they had proper transportation, and he then caused them to leave the train.

*Green & Green,* and *S. L. McLaurin,* for appellant.

Under well-settled rules, a peremptory instruction having been given for the defendant, appellant is entitled to have taken

as true the matters shown by the evidence and reasonable deductions therefrom favorable to himself. At the time of the injury appellant was eighteen years of age, and unacquainted with the dangers incident to jumping on or off railroad trains.

At the time of the ejection the train was moving faster than a man could walk, and by the manner of the ejection plaintiff was injured. Appellant had a right to be where he was, and his ejection was wrongful under any circumstances, and he had a right to recover. 5 Am. & Eng. Ency. Law, 513; *Boggess* v. *Chesapeake, etc., R. Co.,* 37 W. Va., 297; *Boehm* v. *Duluth, etc., R. Co.,* 91 Wis., 592.

This case is covered by *Thompson* v. *R. R. Co.,* 72 Miss. (1895), 715 (s.c., 17 South. Rep., 229), wherein even as to a trespasser—not one lawfully on the train, as here—the learned counsel of the railroad company admitted in their brief: "If the conductor had ordered the boy off, under such circumstances that injury would naturally and necessarily result, then the injury would have been willful."

In *Kline* v. *R. R. Co.,* 37 Cal. (1869), 404, it is said: "He must, then, have undertaken to get off because he was told that he could not ride, and was ordered to do so by the conductor, with a show of force, or must have been with actual force pushed off by the conductor. Upon either hypothesis, we think, the plaintiff should not have been nonsuited."

"Where a boy of ten years of age was upon the platform of a street or horse car, under circumstances very similar to those of the present case, and was ordered to get off by the driver, without stopping the car, and did so and fell, and was run over by the car, the court said: 'If the plaintiff had been a person of mature age, the mere words of the driver could not have been regarded as equivalent to a forcible ejection of the plaintiff from the car, at a time when it was dangerous to leave it; for such a person might have exercised his own judgment as to the peril he might incur in attempting to obey the order. But

the plaintiff was a child of about ten years. His obedience could be naturally expected, without regard to the risk he might incur; and in respect to a child, so giving the command would be equivalent to compulsion.' *Lovett* v. *South Salem & South Danvers Railroad Co.,* 9 Allen, 561." If this be sound doctrine, and we see no reason to doubt, can there be any period in childhood of which it can be said by the court, judicially or as a matter of law, that the judgment is so far matured as to enable a child to so far withstand the positive and menacing command of one in authority as to cast, in whole or in part, the responsibility of obedience upon the child, if his obedience results in personal injury to himself? *Brown* v. *R. R. Co.,* 66 Mo., 595; *Ry.* v. *Kirkbridge,* 79 Tex., 495; *Railroad Co.* v. *Mitchell,* 56 Kan., 35; *Railroad* v. *Kelly,* 36 Kan., 655, 657, 658; *Kreeger* v. *Ry. Co.,* 84 Mo. App., 365; *Railway* v. *Mitchell,* 56 Kan., 324; *Enright* v. *Railroad Co.,* 98 Pa. St., 169; *Hocketh* v. *Railroad Co.,* 67 N. E. (Ind.), 108; *Railroad* v. *Eskew,* 86 Ga., 643.

But appellee may contend that appellant was guilty of contributory negligence in doing that which the conductor ordered him to do, but the replies are obvious: (1) That the court cannot say such was the case. *Nor. Pac. R. Co.* v. *Edgland,* 163 Mo., 98, 99. (2) There was a compulsion upon the part of the appellant to do that which the appellee ordered, and whether it was so must be passed upon by the jury. (3) There was no knowledge on the part of the appellant of the danger incident to doing that which the appellee ordered him to do; and, the *scienter* being absent, contributory negligence is not predicable of his act. 7 Am. & Eng. Ency. Law (2d ed.), 391, 392; Beach on Contributory Negligence, sec. 36.

*McWillie & Thompson,* for appellee.

There can be no doubt that the appellee's conductor, at the time the appellant undertook to get off the flat car, was still engaged in slowing up the train. This fact appears from the testimony of the appellant himself, and is wholly inconsistent

with the idea that the conductor compelled the appellant to alight when he did. The conductor owed the appellant no duty except to refrain from willfully or wantonly injuring him, and how can it be said that he was guilty of that when he employed no coercion of any kind, no force against the body of appellant nor any threat to constrain his will, and when he was still engaged in reducing the speed of the train?

It was not pretended that the efforts of the conductor to slow down the train had any other object than to enable the appellant to alight in safety, and in this task he was still engaged when the appellant alighted. If there be anything in this to show a disposition to willfully or wantonly injure the appellant, the acts of men have most uncertain import. The conductor had initiated, and was still pursuing, a course that would have enabled the appellant to alight in absolute safety.

. Again, is there such danger in alighting from a slowly moving train in broad daylight and on smooth ground as to show that a railway employe who requires a trespasser to alight under such circumstances willfully and wantonly designs to injure him? We think not, for there are in such cases too many better methods at hand for accomplishing such a design. The court should not overlook the fact that the appellant expressed himself as unable to account for his sustaining injury unless it resulted from his foot turning under him, which might have happened just as well in descending from a stationary car. He merely declared his injury to have been contemporaneous with his alighting from the train, and further stated he did not know what caused it, unless it arose from a circumstance that in no way indicated negligence on the part of any other person. His companion, whose foot did not turn under him, descended in perfect safety.

There was no evidence of coercion on the part of the appellee's conductor, and the case seems to be covered by the decision in *Bardwell* v. *Railroad Co.,* 63 Miss., 574, and the cases following it. In the Bardwell case the plaintiff was a passenger, and the

conductor directed him where to alight on a dark night while the train was in rapid motion.     Here we have a trespasser who alighted from a slowly moving train in broad daylight and while the conductor was still engaged in slowing down the train.     The conductor had told him he would have to get off, but he did not expect him to do so while he was still engaged in stopping the train.     He did not direct him when or where to alight, being at the time engaged in doing that which would most add to his safety in alighting; but we respectfully submit that if the conductor had so directed him, in the absence of any coercive action to enforce the direction, the appellee would be under no liability for any resulting injury.     If there was any hazard in alighting when and where the appellant descended from the car, such hazard was quite as obvious to appellant as it was to the conductor; indeed, it must have been much more so, as the conductor's attention was not directed at the moment to his alighting.

The court will have observed that the train in question was a regular freight train, and that even if the plaintiff was entitled to ride thereon, he had no right to ride in the freight car from which he was ejected, and that under Code 1892, § 3557, only the gross negligence of its servants in the matter of the plaintiff's ejection could impose liability upon the appellee.

What we have referred to as showing the absence of willfulness also shows the absence of gross negligence, and need not be repeated nor discussed with reference to the authorities cited by appellant without regard to the distinguishing features which make them wholly inapplicable.     For a definition of gross negligence, see *Illinois, etc., R. R. Co.* v. *Stewart,* 21 Am. & Eng. R. Cas., 874.     The appellant objects to the application of this statute apparently on the theory that it applies only to defects of equipment and to injuries received by passengers while still on freight trains.     No justification for such a limitation can be found in the words of the statute nor in the decisions of this

court. While freight trains have not the appliances for the comfort and security of passengers, and particularly the conveniences of ingress and egress, that passenger trains have, neither are they operated by men accustomed to handle passengers nor men selected with reference to the performance of any duty to passengers. This court has already applied the statute in a case where the negligence complained of was that of the conductor of a freight train as the result of whose conduct a lady passenger was compelled to alight in bad weather some distance from the depot, and this decision is a complete answer to appellant's contention. *Perkins* v. *Railroad Co.,* 60 Miss., 727. It will be recollected that, assuming plaintiff's right to ride on the train, he was properly ejected from the box car.

The test of the propriety of granting a peremptory charge seems to be whether or not a verdict to the contrary effect would be allowed to stand, and certainly no verdict for the plaintiff in this case could have been allowed to stand without doing violence to justice.

CALHOON, J., delivered the opinion of the court.

The evidence is conflicting, and without an elaborate recital of it, we think the case should have been left to the jury. They are the forum to determine whether the injury occurred in getting off the train, or subsequently, in attempting to board the caboose while in motion; and it is for them to decide whether or not there was contributory negligence in getting off the train, in view of plaintiff's age and the attendant circumstances, and whether or not the disembarkation was made reasonably incumbent on plaintiff, under the facts they may believe to be established, considering the age of plaintiff and the acts or words of the conductor which may be shown. If the peremptory instruction was given by the learned judge below on the idea that he would set aside a verdict for recovery on the whole case, we think this stretches the doctrine too far, there being here no warrant for

the position that, as matter of law, conceding the testimony for plaintiff to be true, no case is shown.

There is a distinction in the rules applicable to the action of courts in granting new trials and in giving peremptory instructions. Occasionally it is the duty of a trial court to set aside a verdict and grant a new trial, where the judge is of the opinion that the finding of the jury is clearly against the great preponderance of the evidence. But the result is simply a rehearing of the cause, and the plaintiff is protected, finally, by Code 1892, § 738, against more than two new trials on the facts, and no appeal lies from allowing a new trial, a review by this court being had only after the final termination of the cause. Action by jury is a right where the litigant presents testimony which, if true, "fairly tends to prove the case." Brame & Alexander's Digest, 640, and the cases there digested in secs. 61-68. Peremptory charges should be given only where the evidence, taken as absolutely true, and might be so found by the jury, establishes no legal right or fails to maintain the issue. *Id.* If, in the case in hand, there had been no other testimony than that for the plaintiff, it would hardly have been warranted to instruct peremptorily for defendant, even though the trial judge might have not believed it. On careful consideration of the facts and opinions reported, it will be found that the following cases are not out of harmony with our views as to peremptory charges or the weight of authority in this state—viz.: *Holmes* v. *Simon,* 71 Miss., 246 (15 South. Rep., 70); *Bernheim* v. *Dibbrell,* 66 Miss., 199 (5 South. Rep., 693); *Crawley* v. *Railroad Co.,* 70 Miss., 343 (13 South. Rep., 74); *Railroad Co.* v. *Doyle,* 60 Miss., 977.

It is not the law that, because the presiding judge might well grant a new trial on account of the verdict being against the overwhelming preponderance of the evidence, the court is therefore warranted in giving a peremptory instruction. It may grant new trials because of this, not exceeding two, but not finally oust

the party by a peremptory charge, unless the evidence, upon the concession that it is absolutey true, discloses no legal right.

*Reversed and remanded.*

*McWillie & Thompson,* for appellee, after the delivery of the foregoing opinion, filed a suggestion of error, to which the court replied as follows:

CALHOON, J., delivered the response of the court to the suggestion of error.

The argument in support of the suggestion of error would be very strong indeed if presented on a motion for a new trial. It would be quite cogent, even now, in the advocacy of a peremptory instruction, if the facts were all precisely as counsel think they are. We have no purpose to overrule *Bardwell* v. *Railroad Co.,* 63 Miss., 574 (56 Am. St. Rep., 842), or to affect it in any way. In that case the passenger, when about to board the train, wanted the conductor to agree to stop for him to get off at a crossing. This the conductor declined to do, because the rules did not allow trains to stop there; but he did agree to slow down there, so the passenger might jump off. When the speed was, in the opinion of the conductor, sufficiently slackened to safely admit of it, he told the passenger he could safely jump off, whereupon he voluntarily did jump and was hurt. There was no command to jump, and the court properly held that it was voluntarily done, and that the opinion of the conductor that it might be safely done was no excuse or justification. In the case at bar evidence appears that the conductor ordered appellant to jump, and when the appellant told him he could not get off while the train was running, and asked him to stop, the answer was that he would not run any slower, and he repeatedly ordered him off. Now, whether there was contributory negligence, or justification for the act of jumping off, from what the conductor said and did, is, under the rule of *Thompson* v. *Railroad Co.,* 72 Miss., 715 (17 South. Rep., 229), a matter for the jury to deter-

mine, from appellant's age and all the surroundings. If, on a fair view of the whole evidence, they think the jumping was, in fact, needless and a voluntary act, the verdict should be for appellee, of course; but we think the jury, and not the court, the proper agency to determine this.

*Suggestion overruled.*