UNIVERSAL TRUCK LOADING Co. *v.* TAYLOR *et al.*

(Division B. Nov. 11, 1935. Suggestion of Error Overruled Jan. 13, 1935.)

[164 So. 3. No. 31824.]

Jacobson & Snow, of Meridian, for appellant.

Reily & Parker, of Meridian, for appellees.

Griffith, J., delivered the opinion of the court.

This case arose out of a collision, about ten-thirty o'clock at night, between two commercial trucks on or at

a concrete bridge about two miles south of Basic in Clarke county. The bridge is eighteen feet five inches wide and twenty-one feet long. Appellant's truck was an International heavy machine with a strong factory built body seven feet six inches wide, and this truck on the occasion in question was northbound. The southbound truck was a Chevrolet light machine with a homemade body of seven feet six inches in width. The northbound truck was being driven by an adult, experienced driver accompanied by an experienced helper. The southbound truck, owned by a man named Covington, was being driven by a seventeen year old boy, who, while he had had some experience in handling trucks, had never before driven that particular truck. The owner, Covington, and his wife were seated on the driver's seat with the driver.

The northbound truck at the moment of the collision was being driven between twelve and fifteen miles per hour; the southbound truck about twenty to twenty-five miles per hour. The radiators, hoods, cabs, and front fenders of the two machines passed each other without injury, but the left-hand corners of the projecting bodies of the two trucks came in contact, with the result that the left side of the homemade body was stripped away, and the débris therefrom was scattered from just north of the north end of the bridge down to about the center thereof, with a few random pieces south of the center of the bridge. There was a tarpaulin cover over the homemade body of the southbound truck, and the torn portions of this tarpaulin were scattered along from the center of the bridge to its northern edge. Appellees' decedent, who was riding in the rear of the southbound truck, was killed as the result of the damage to the body of that truck; and on an action therefor and trial thereof appellees recovered judgment.

The drivers of the northbound truck testified that the collision happened when that truck was about to pass, and had partly passed from the bridge on the north side

thereof. The driver and the owner of the southbound truck, together with the owner's wife, testified that the collision occurred at the south end of the bridge, and when the southbound truck was about to pass, and had partly passed, from the south end of the bridge. However, six witnesses, four of them wholly disinterested, testified that a short time after the collision and while all the débris and track signs were still on the ground, the said owner of the southbound truck pointed out to them a place a few feet north of the bridge which he then claimed was the point of collision, and this statement by him is denied by him alone. The northbound truck stopped not far north of the bridge, and the southbound truck continued to a point not far south of the bridge.

The above-stated conflict as to the place of collision directs our attention to the débris left on the ground as a result thereof. As already stated, this débris, being broken pieces from the body of the homemade southbound truck, was found scattered all the way from just north of the north side of the bridge down to about the center thereof, with a few random pieces still further south. This fact is established by the overwhelming weight of the evidence. Within a short time after the accident, numbers of people arrived at the scene. There was the sheriff of the county, the constable of the district, the postmaster from the nearest post office. There were other neighbors and several who were traveling on that road and who stopped and remained at the scene of the misfortune. All these responsible and disinterested witnesses agree, and almost without substantial difference, that the location of the débris was as above stated, the only dispute of it being by two or three interested witnesses, and even their testimony, when closely examined, does not seriously dispute that of the disinterested witnesses in reference to the débris.

The only reasonable explanation of the location of the débris, considered from the viewpoint of reasonable probabilities, is that the collision occurred at the north end

of the bridge. The body of the northbound truck was not broken or otherwise materially injured. It showed signs of contact in the scraping off of the paint on the left side of the body, but there was no break in the northbound truck from which broken pieces could fall or by which broken pieces could be carried forward by it. If the collision occurred at the south end of the bridge, as contended for by appellees, then in order for parts of the débris to be at the north end of the bridge the force of the blow by the northbound truck must have been sufficient not only to tear off these parts from the homemade body of the southbound truck, but also to have thence propelled or hurled them through the air all the way across this bridge, twenty-one feet long. When we remember that the northbound truck was traveling only between twelve and fifteen miles per hour, we must declare as a matter of common sense that any such hurling forward for any such distance of this débris, broken planks, and broken standards and the like, although perhaps possible, is not within the acceptable range of a reasonable probability, and the latter is the test in a civil suit.

If the collision occurred at the north end of the bridge, as this record shows as a probability, there is no liability on the part of appellant, for two reasons: If the collision occurred at the north end, this means that the northbound truck first arrived at the bridge and therefore had the right of way across it. And again, the testimony is overwhelming, in fact is substantially undisputed, that the dual track of the northbound truck from the center of the bridge to the north edge thereof plainly showed that the wheels of the northbound truck ran parallel with the east banister of the bridge and not more than eighteen inches from said east banister, and after leaving the bridge turned slightly to the right or east, so that the northbound truck was not at any time, from the center of the bridge northward, over on the other or west half of the highway.

It is with great reluctance, as we have often said, that

we will reverse a verdict of a jury on the facts. At the same time the obligatory duty of the courts in that respect is as expressed in two recent opinions by Judge ETHRIDGE, as follows: ''We are conscious of the fact that the verdict of a jury is to be given great weight, and is the best means, when fair, of settling disputed questions of fact. Nevertheless, throughout the entire history of jury trials, the courts have exercised a supervisory power over them, and have granted new trials whenever convinced, from the evidence, that the jury has been partial or prejudiced, or has not responded to reason upon the evidence produced. The duty of the court in supervising trials by jury is such a vital part thereof that no court may refuse to exercise such power whenever fully convinced of its duty so to do.'' Beard v. Williams, 172 Miss. 880, 161 So. 750, 751. ''Where the evidence on one side is cogent and strong by unimpeached and disinterested witnesses, and that on the other side weak and improbable or by interested witnesses, or witnesses whose credibility has been impeached, or who have failed to respond to the evidence, the judge would be authorized in setting aside a verdict; but he must find, from a full consideration of all the evidence, that the verdict is clearly contrary, not to the mere weight of the evidence, but to the overwhelming weight of the evidence. It must be such a verdict as would cause an enlightened conscience to shrink at the result. . . . A verdict should only be set aside where it is manifest, from the evidence and surroundings, that it is not a fair and true verdict.'' Shelton v. Underwood (Miss.), 163 So. 828, 830.

The verdict, as we have pointed out, does not respond to reason upon the overwhelming evidence produced; it is manifest from the evidence and surroundings that it is not a fair and true verdict.

Reversed and remanded.