UNIVERSAL TRUCK LOADING CO. v. TAYLOR et al.

(Division B. March 1, 1937.)

[172 So. 756. No. 32359.]

144

J. H. Currie and J. C. Floyd, both of Meridian, for appellant.

Reily & Parker, of Meridian, for appellees.

**Ethridge, P. J.,** delivered the opinion of the court.

This is the second appeal of this case, the first decision being reported in 174 Miss. 353, 164 So. 3.

It is urged upon us here that the former decision is binding because there is no substantial difference in the evidence there and here. This is an erroneous view of the law upon that subject. When a case is reversed upon the ground that the verdict is contrary to the overwhelming weight of the evidence, it is sent back for a new trial, and the court below is not bound in the new trial by the judgment of this court on the weight of the evidence. The jury may find another verdict upon the same evidence, if, in their judgment, it is proper to do so. This court may then pass upon the sufficiency of the evidence

in view of the fact that two juries have considered it as sufficient to sustain a verdict. This court may, if it still thinks the facts are contrary to the overwhelming weight of the evidence, set the verdict aside and remand the case for a further trial. But if a third jury finds that the evidence is sufficient, it then becomes binding upon this court and judgment must be rendered upon the verdict. Code 1930, section 592, and the cases cited thereunder.

This power of the court to review the evidence and set aside the verdict on the ground that the evidence is against the overwhelming weight of the testimony is very ancient, and has been the law of this state for the whole period of its history, and existed at the common law. Dickson v. Parker, 3 How. 219, 34 Am. Dec. 78; Sims v. McIntyre, 8 Smedes & M. 324; McQueen v. Bostwick, 12 Smedes & M. 604; Drake v. Surget, 36 Miss. 458; Fore v. Alabama & V. Ry. Co., 87 Miss. 211, 39 So. 493, 690; Mobile & O. R. R. Co. v. Bennett, 127 Miss. 413, 90 So. 113; Brown v. State, 153 Miss. 737, 121 So. 297; Beard v. Williams, 172 Miss. 880, 161 So. 750, 751.

Jury trial is not merely a trial by twelve men but of twelve men selected by law, with the judge, to pass upon many legal questions, and having a limited supervision over the trial. The power to set aside a verdict because of the overwhelming weight of the evidence is given by the law to prevent bias, prejudice, and corruption from entering into the administration of justice, and for the protection of litigants, but it is not to be exercised unless the judge is strongly convinced of its necessity from a consideration of all the matters contained in the record. The judge may not substitute his judgment for that of the jury merely because he would have decided the matter differently. He must be convinced, from the whole of the evidence and facts contained in the record, that the trial has not been fair and

impartial. The Constitution guarantees to each litigant a fair and impartial trial. Conflicts in the testimony and the veracity of witnesses are for the determination of the jury, not the judge. Shelton v. Underwood, 174 Miss. 169, 163 So. 828, and Beard v. Williams, supra. In the last-named case we said: "We are conscious of the fact that the verdict of a jury is to be given great weight, and is the best means, when fair, of settling disputed questions of fact. Nevertheless, throughout the entire history of jury trials, the courts have exercised a supervisory power over them, and have granted new trials whenever convinced, from the evidence, that the jury has been partial or prejudiced, or has not responded to reason upon the evidence produced. The duty of the court in supervising trials by jury is such a vital part thereof that no court may refuse to exercise such power whenever fully convinced of its duty so to do." We expressed this view on the former appeal and acted upon it. The case went back and another jury passed upon it, and its judgment is entitled to fair consideration even if it acted upon the same evidence that was then before us. But, in our view the case has been strengthened in the second trial from which this appeal is taken.

This suit is for the death of appellee's husband and the father of the other complainants, which occurred in a collision, about 10:30 P. M., between two commercial trucks, one belonging to appellant and used by it, and the other being owned by one Covington, in which the deceased was riding, on or at, a concrete bridge about 2 miles south of Basic, in Clarke county, the bridge being 18 feet, 5 inches, wide and 21 feet long. According to the evidence of Mr. Sykes, the driver of the Covington truck, and Mrs. Covington who was riding therein, the collision occurred at the south end of this bridge, and according to the testimony of the driver of the Universal truck, and his helper, it occurred at the north end of

this bridge. It appears that the Universal truck was slightly higher than the Covington truck. The body of the Covington truck was built of timber, having a 2-inch pine board bottom, with standards or sides of white oak, and covered with 1 inch pine boards and with tarpaulin which was fastened to the body of the truck.

The deceased and two others, who were killed in this collision were seated upon a bench or seat on the east side of the Covington truck. After the wreck, one body was found at the south end, the others still further on.

The Universal truck was going to the north on the east side of the bridge, and the Covington truck was traveling on the west side thereof going south, and the road was wider on each side than the bridge. The view to the north of the bridge extends for some 1,200 feet, the descent to the bridge being gradual, and the view to the south extends about 1,300 feet. On approaching the bridge, the Universal truck met another car and pulled out of the main traveled road at a distance, as estimated by the driver and another party, of about 400 feet from the bridge.

Two witnesses for the appellee testified that, prior to the collision, the Universal truck turned sharply to the left and ran into the Covington truck. The driver of the Covington truck testified to this fact on this trial, but not on the first trial, and also that he was on the west side of the bridge and heard the body of his truck scrape against the rail or post of the bridge on the west side. The driver of the Universal truck and his helper denied turning to the left and testified that said truck approached the bridge parallel with it, and they thought, at the time, that the contact made by the collision was the body of the Universal truck rubbing against the bridge on the east side.

It appears that the tarpaulin on the body of the Covington truck was attached to the débris after the collision,

but that it had been torn, and part of it was on the truck. Two young women who were in the Covington truck testified that they were thrown into the center of the bridge, and that this tarpaulin attached to the débris was over them. About the center of the bridge there was found broken glass, and the light to the rear of the Universal truck was broken off in the collision.

A number of witnesses who appeared at the scene shortly after the collision testified that most of the débris was north of the bridge, some of them saying there was none at any other point.

Mrs. Covington and the driver of the truck testified that, in their opinion, the Universal truck was traveling at about 35 miles per hour as it approached the bridge. The driver of the Universal truck and his helper testified that the driver had shifted the gear into fourth, after which the truck was controlled by a governor, and could not exceed 15 miles per hour.

Early in the morning subsequent to this accident, a brother-in-law of two of the men killed in the Covington truck visited the scene of the accident, examined the bridge, and noticed some abrasion, as though the Covington truck had scraped the posts. He did not so testify on the first trial.

Appellee also introduced two of the state highway employees who had examined the scene of the collision, and had interviewed Dewey York, the driver of the Universal truck, and they testified that Dewey York told them that he had hit, on the south end of the bridge, the other truck. They were then asked as to their report to the highway department concerning the accident which did not mention this statement by Dewey York, but merely reported the place of the collision. Each of these witnesses testified to this statement made by York in the trial now under review, but not on the first trial. The appellant also introduced evidence showing

that the tread on the rear wheel of the truck on the east side was observed on the night after the collision, attention being called to it, and this tread was about 18 inches from the east side of the bridge.

We deem it unnecessary to state the facts more in detail, as it will appear from the above statements that the evidence for the plaintiff was strengthened by this testimony on the present trial over that had on the first trial. It will also appear that the statement of Dewey York as shown by the testimony of the highway employees, as compared to their report to the highway department, is contradicted by contrary statements made out of court.

We are of the opinion that the evidence in the present trial was sufficient to warrant the jury in finding for the appellee. The advantage of the jury's view of the witnesses and their demeanor is discussed in the case of Davis v. Temple, 129 Miss. 6, 91 So. 689, 690, the court there saying that:

"The rule has often been announced in this court that conflicts in the evidence are to be settled by the jury or other triers of fact. The testimony of one witness may be entitled to more credence than the testimony of many others, where the witness has had opportunity to know the facts he is testifying about, and has sufficient probity of character to convince the trier of facts of the truth of his statements. It often appears to a judge of an appellate court getting a view solely from the printed page that the jury has found wrongly, but the judge here has not same opportunities for weighing the credibility of the testimony as the judge and jury below have. We recognize that the jury can see the witnesses, know of their appearance and candor, see something of their demeanor, and know something of their character, and are thus better able to settle questions of facts than the judges of this court, who only get the evidence from the printed page."

This question was also discussed in the case of Williams Yellow Pine Co. v. Henley, 155 Miss. 893, 125 So. 552, 553, where the court said: "The right of trial by jury in common-law cases is a right granted and guaranteed by the Constitution. It cannot be denied directly, and for that reason cannot be denied indirectly. And neither can it be denied in part, for if so it could with equal authority be denied in toto; and to say that it cannot be denied in part is the same as to say that it cannot be abridged. If this court should assume to consider that the verdict of a jury in a common-law case is no more than advisory to the trial court or to this court, and is to be approved or set aside according to whether it corresponds with what the court would have found on the facts, then there would be an abridgement of the constitutional right of trial by jury; the form of the jury trial would be preserved, but its substance would be gone. Such an assumption on the part of the court would be usurpation, and contrary to the oath of office which every judge in this state must take and which binds him in every official thought and action during his tenure."

In the case of Columbus & G. Ry. Co. v. Buford, 150 Miss. 832, 116 So. 817, 820, this court said, "We desire to say, however, in addition to this reason for reversal, that, because the testimony of Steen was impeached by four witnesses who had known him long, and were intimately acquainted with his character, and who testified that he was regarded in his own community as being unworthy of belief and credence, and that they would not believe him on oath, and, because of the fact that his testimony is contradicted so strongly by numerous witnesses whose testimony has not been impeached or whose character has not been questioned. . . . that such verdict should be set aside, and a new trial granted for hearing before another jury, although the court could not, and should

not, give a peremptory instruction for the defendant because of such unsatisfactory testimony."

The distinction between the giving of a peremptory instruction for a party, and the setting aside of a verdict, is also pointed out in the case of Fore v. Alabama & V. Ry. Co., 87 Miss. 211, 39 So. 493, 690.

In the case of Mobile & O. R. R. Co. v. Cox, 153 Miss. 597, 121 So. 292, this court said that, "It is not for a trial judge in a court of law, nor for us here, to say that such inferences and deductions, if and when drawn, do not comport with what under the evidence the judge would find on that evidence. Fact finding, which includes all material inferences and deductions which may be reasonably and logically drawn from the relevant direct facts, is a province which belongs to the jury, to be exercised by them according to the everyday experience and common observation of the 12 men constituting the jury—not of and by any one man, be he judge or juror."

In the case of Shelton v. Underwood, 174 Miss. 169, 163 So. 828, 830, the court said that, "Before the trial court is authorized to set aside the verdict of the jury, there should be such a state of facts as would render the verdict unreasonable, or show that it was the result of bias and prejudice, amounting to corruption."

In Haynes-Walker Lumber Co. v. Hankins et al., 141 Miss. 55, 105 So. 858, 860, the court said that, "Issues of fact are to be tried by the jury. The court will not be justified in taking a case from the jury where there is substantial evidence tending to prove the plaintiff's case. The court cannot substitute its judgment on an issue of fact for that of the jury. The physical signs left on an automobile and a heavy truck resulting from a collision between them naturally would be, in a large measure, treacherous and uncertain in meaning. The jury heard the testimony as to their physical condition as well as the other testimony in the case. In addition, in con-

sidering the question, they had a right to draw on their own knowledge and experience in reference to such matters."

In the case of Teche Lines, Inc., v. Pasavanti, 163 Miss. 93, 140 So. 677, 678, in discussing questions arising out of collisions, and the physical facts thereof, the court said in the majority opinion, that the "movements of two automobiles after colliding, where both, or only one of them, are traveling at a high rate of speed, are highly problematical. Experience shows that often they cannot be accounted for."

It will be noted from a comparison of the above-cited cases that while the judges have the power, when convinced that a judgment is the result of bias, prejudice, passion, or corruption, to set it aside and grant a new trial before another jury, still the question is for the ultimate decision of the jury where there is conflict in the evidence. Of course, there is no inconsistency in the doctrine announced in the various cases. Whenever there is substantial proof for one party, and the jury finds for such party, the verdict should stand, although more witnesses testify for the opposite party. Unless, from the whole case, the court is clearly convinced that the jury did not fairly and honestly respond to the testimony, the verdict should not be disturbed. Jury trials properly safe-guarded against passion and prejudice are great securities for the citizen, and the court will not set them aside, unless convinced in the manner indicated that the jury has not fairly responded to the evidence, but has been actuated by unfair or corrupt motives.

The judgment of the court below is affirmed. Affirmed.