BELK, et al. *v.* ROSAMOND, et al.

Mar. 17, 1952.

No. 38222 (57 So. (2d) 461)

Perry Morton and Robertson Horton, for appellants.

Crawley & Brooks, and **John H. Shands**, for appellees.

**Kyle, J.**

R. C. Belk and his wife, Mrs. Linnie Braswell Belk, the father and mother of Myra Morice Belk, deceased, and Charles Belk and Annette Belk, minor brother and sister of Myra Morice Belk, deceased, plaintiffs, sued G. M. Rosamond and his wife, Mrs Inez Rosamond, and B. F. Wiley, Mrs. Lynn Wiley and Frank Wiley, Jr., a minor, defendants, in the Circuit Court of Carroll County, for damages for the wrongful death of Myra Morice Belk, who died on May 24, 1950, as a result of personal injuries received by her while she was riding on the left front fender of a Pontiac automobile owned by G. M. Rosamond and being driven by his wife, Mrs. Inez Rosamond, when the Rosamond automobile came in contact with another Pontiac automobile owned by B. F. Wiley, which was parked on the south side of the bridge over Big Black river on Highway No. 35 about five miles east of the town of Vaiden. The Wiley automobile had been parked on the bridge about 4:30 o'clock a.m. by Frank Wiley, Jr., after he had had a blowout in the right rear tire about 150 feet east of the west end of the bridge while he and two other boys were on a fishing expedition.

The collision, which resulted in the death of Myra Morice Belk, occurred between 3:00 and 4:00 o'clock in the afternoon, when the automobile which was being

driven by Mrs Rosamond collided with the parked automobile owned by B. F Wiley, while Mrs. Rosamond was driving westwardly over the bridge toward the Town of Vaiden.

The plaintiffs alleged in their declaration that Mrs. Rosamond was grossly negligent in the operation of the automobile on which Myra Morice Belk was riding, and that her negligence proximately contributed to the injuries and death of Myra Morice Belk, and that Frank Wiley was grossly negligent in parking the Wiley automobile on the south side of the Big Black river bridge, and leaving the same on the bridge unattended for a period of several hours, and that his negligence likewise contributed to the injuries and death of Myra Morice Belk.

The negligence charged against Mrs. Rosamond was (1) that she was negligent in permitting a child of such tender years to ride upon the left front fender of the automobile which she was driving, when she knew or should have known that the position in which the child was placed was a position of great danger; (2) that she was negligent in driving the automobile at an excessive rate of speed in view of the position occupied by Myra Morice Belk at the time of the collision; (3) that she was negligent in operating the automobile at a dangerous rate of speed when she undertook to pass the parked car on the bridge; (4) that she was negligent in failing to keep the automobile which she was driving on the right or north side of the bridge, so as to avoid a collision with the parked car owned by the Wileys; and (5) that she was negligent in failing to keep the automobile which she was driving under proper control so as to avoid a collision under the circumstances involved and known to her.

The plaintiffs charged that Frank Wiley, Jr., was negligent in the following particulars: (1) That he had carelessly and negligently parked the automobile which he was driving and which he had under his control on the bridge in violation of the provisions of Section 8217,

Code of 1942; (2) that he had carelessly and negligently parked the automobile which he was driving on the main traveled part of the highway, without leaving a clear and unobstructed width of 20 feet of the main traveled part of the highway for the free passage of other vehicles, in violation of the provisions of Section 8215, Code of 1942; and (3) that he had parked the automobile which he was driving at a place and in a manner that he knew, or should have known, to be dangerous to the deceased and other persons traveling on the highway. And the plaintiffs charged that the negligence of Frank Wiley, Jr., was in law imputed to his parents, B. F. Wiley and Mrs. Lynn Wiley, for the reason that they had signed the application of the said Frank Wiley, Jr., for a driver's license, under the provisions of Section 8096, Code of 1942.

The plaintiffs asked for actual and punitive damages against all of the defendants.

Mrs. Rosamond and her husband in their answer denied that Mrs. Rosamond was negligent in permitting Myra Morice Belk to ride on the fender of the automobile; and they denied that Mrs. Rosamond was negligent in the operation of the automobile, or that she was driving at an excessive rate of speed at the time of the accident; and in their answer they alleged that the accident was due to the fact that Mrs. Rosamond was temporarily blinded by the reflected light of the sun, when the rays of the sun suddenly struck the hood of her automobile and flashed into her eyes as she was driving westwardly over the bridge.

The Wileys in their answer admitted that they had signed Frank Wiley's application for a driver's license, but denied that they had agreed to become responsible for any damages caused by the negligence of Frank Wiley. They admitted that the automobile owned by B. F. Wiley was parked temporarily by Frank Wiley, Jr., on the bridge about 150 feet from the west end of the bridge, as alleged in the plaintiffs' declaration; but they denied that it was negligently parked on the bridge in

violation of the statutes; and they alleged that the car was parked close to the south railing of the bridge and that ample space was left for the passage of other motor vehicles using the highway; and they denied that the parking of the automobile on the south side of the bridge under the circumstances constituted negligence on the part of Frank Wiley, Jr., or that they were in any way liable for the injuries sustained by the said Myra Morice Belk on the occasion referred to.

There is very little conflict in the testimony of the witnesses. The record shows that the child, Myra Morice Belk, was visiting in the home of G. M. Rosamond and his wife on the day of the fatal accident. The Rosamond home was situated on State Highway No. 35, a short distance east of the Big Black river bridge. Mrs. Rosamond had three small children and a daughter, Baby Linda, who was nine years of age. She also had a stepdaughter, Linda Rosamond, who was several years older than Baby Linda. About 3:00 o'clock in the afternoon Mrs. Rosamond decided to drive to Vaiden for the purpose of purchasing a bag of chicken feed. All of the children wished to accompany her on the trip. Mrs. Rosamond placed her three small children on the back seat of the Pontiac automobile. The older girls requested that they be permitted to ride on the front fenders of the automobile, and Mrs. Rosamond consented that they might do so. Myra Morice Belk and Baby Linda seated themselves on the left front fender, and Mrs. Rosamond's stepdaughter, Linda, and Mary Jean Rucker, who was also visiting in the Rosamond home, seated themselves on the right front fender. Mrs. Rosamond testified that she drove the automobile carefully, and that she did not think that it was dangerous for her to drive the automobile with the four children sitting on the front fenders. She testified that she drove at a rate of speed of about 15 miles an hour until she came to the Big Black river bridge and that she then reduced her speed to about 10 or 12 miles an hour. But as she was proceeding westwardly over the bridge, she

left the north travel lane of the bridge and ran into the Wiley car which was parked on the south side of the bridge about 150 feet from the west end of the bridge. As a result of the impact with the Wiley car the children who were riding on the front fenders of Mrs. Rosamond's car were thrown from the Rosamond car onto the bridge, and Myra Morice Belk suffered such great bodily injuries that she died as a result of the injuries about one hour later before reaching a hospital at Winona.

The proof showed that Frank Wiley, Jr., who was sixteen years of age, had parked the Wiley automobile on the bridge about 4:30 o'clock a.m., and that the automobile had remained on the bridge for a period of ten or eleven hours before the fatal accident occurred.

At the conclusion of the plaintiffs' testimony, a motion was made for a directed verdict as to the defendant, G. M. Rosamond, and that motion was sustained by the court. A motion was also made for a directed verdict as to the defendants, B. F. Wiley, Frank Wiley, Jr., and Mrs. Lynn Wiley. But that motion was overruled. A motion was made on behalf of all of the defendants for a directed verdict as to the plaintiffs' claim for punitive damages; and that motion was sustained. At the conclusion of all of the testimony the case was submitted to the jury on the question of the liability of Mrs. Rosamond and the Wileys for actual damages, and the jury returned a verdict for the defendants. The plaintiffs filed a motion for a new trial which was overruled by the court, and a judgment was entered for the defendants. From that judgment the plaintiffs prosecute this appeal.

The appellants' attorneys in their assignment of errors alleged that the court erred in granting each of the instructions granted to the defendants and in refusing to grant two instructions requested by the plaintiffs, and that the court erred in overruling the plaintiffs' motion for a new trial. And the appellants' attorneys in their brief argue four points on this appeal, viz.: (1) That the court erred in sustaining the motion of all of the defend-

ants for a directed verdict as to punitive damages; (2) that the court erred in refusing plaintiffs' instruction No. 12; (3) that the verdict is contrary to the law and the evidence; and (4) that the court erred in overruling the plaintiffs' motion for a new trial.

In view of the conclusions that we have reached after a careful study of the record, we shall not undertake to discuss the four points mentioned above in the order in which they are listed in the appellants' brief; nor shall we undertake to discuss in detail all of the instructions referred to in appellants' assignment of errors. We think that the court committed no error in sustaining the motion of the defendants for a directed verdict on the issue as to the defendants' liability for punitive damages. But in our opinion the verdict of the jury on the issue as to the defendants' liability for actual damages is contrary to the overwhelming weight of the evidence, and the judgment of the lower court must be reversed and a new trial granted on that account. There are also serious errors in the instructions which we shall refer to later.

As stated by Judge Ethridge in the opinion rendered by this Court in the case of Beard v. Williams, 172 Miss. 880, 161 So. 750, we are conscious of the fact that a jury trial affords the best means of settling disputed questions of fact in cases of this kind, and the power of a court to set aside the verdict of the jury and grant a new trial on the ground that the verdict of the jury is contrary to the weight of the evidence should be exercised by the court with the utmost care. But the power of the court to review the evidence and set aside the verdict of the jury on the ground that the verdict is against the overwhelming weigh of the evidence is a necessary incident to the right of trial by jury itself. The right of the court to grant a new trial whenever convinced from the evidence that the jury has been partial or prejudiced, or has not responded to reason after a full hearing of the testimony, was recognized under the common law; and the duty of

the court to grant a new trial in such case is so well settled that no court may refuse to exercise such power when fully convinced of its duty to do so. Sims v. McIntyre, 8 Smedes & M. 324; McQueen v. Bostwick, 12 Smedes & M. 604; Drake v. Surget, 36 Miss. 458; Fore v. Alabama & Vicksburg Railway Co., 87 Miss. 211, 39 So. 493, 690; Mobile & O. R. Co. v. Bennett, 127 Miss. 413, 90 So. 113; Brown v. State, 153 Miss. 737, 121 So. 297; Beard v. Williams, supra; Universal Truck Loading Co. v. Taylor, 178 Miss. 143, 172 So. 756.

According to the testimony of the witnesses in the case that we now have before us, the Rosamond car struck the Wiley car with such force that the left front wheel of the Wiley car was knocked off and the left front fender of the Rosamond car was badly damaged. The bridge on which the accident occurred was 825 feet in length, and Mrs. Rosamond had an unobstructed view of the bridge for a distance of 300 feet before she drove her automobile upon the bridge. The Wiley automobile was parked about 150 feet east of the west end of the bridge. Mrs. Rosamond therefore had an unobstructed view for a distance of 975 feet before she came in contact with the Wiley automobile. Yet she testified that she did not see the Wiley automobile until after the accident had occurred. And the only explanation that she was able to offer was that she was momentarily blinded by the sunlight. One driving an automobile may be momentarily blinded by the sunlight reflected from the bright metal on the front end of the car; but it is difficult to understand how one could drive a distance of 675 feet along a straight highway or bridge in the daytime without observing an automobile parked upon the traveled portion of the highway or bridge, which was plainly visible to the drive for a distance of 300 feet.

The driver of an automobile on the public highway must keep a reasonable lookout for persons and objects in the line to be traversed. And the failure of a driver of an automobile to keep a proper lookout

constitutes negligence. McDonald v. Moore, 159 Miss. 326, 131 So. 824; Graves v. Johnson, 179 Miss. 465, 176 So. 256. The driver of an automobile must keep his machine constantly under control. He must continue on the alert for pedestrians and others using the highway. Ulmer v. Pistole, 115 Miss. 485, 76 So. 522; 5 Am.Jur., p. 598, Automobiles, par. 166.

Section 8181, Code of 1942, requires that an automobile be driven upon the right half of the roadway.

■■ Frank Wiley, Jr., admitted that he had left his stalled automobile on the bridge from 4:30 o'clock a. m. until the midafternoon without taking any effective action to remove it from the bridge, although he had made two trips back to the stalled car during the morning. The fact that the bridge was 19 feet 3 inches in width and that approximately 13 feet of the traveled portion of the bridge remained unobstructed did not relieve him from the duty of taking prompt and effective action to remove the automobile from the bridge without unreasonable delay so as to avoid the danger created by the parking of the automobile on the bridge.

In case a motor vehicle is disabled on the public highway so that it cannot be moved under its own power, if it can be removed from the traveled portion of the highway, it is the duty of the driver to so remove it. Keller v. Breneman, 153 Wash. 208, 279 P. 588, 67 A.L.R. 92.

There are serious errors in several of the instructions granted to the defendants which it is necessary that we discuss in this opinion, so that they may not be repeated in another trial.

■■ In the defendants' instruction No. 5 the court instructed the jury, "That under the laws of Mississippi no passenger who has reached mental responsibility in an automobile shall ride in such position as to interfere with the driver's view ahead or to the sides, or to interfere with his control over the driving mechanism of the automobile." This instruction was erroneous in that it was based upon the assumption that the jury would be

warranted in finding that Myra Morice Belk had reached the age of mental responsibility, when in truth and in fact the proof showed that she was a child only eleven years of age and was prima facie presumed not to be possessed of sufficient discretion to make her guilty of contributory negligence, and there was no proof in the record to show that she was a child of exceptional capacity or possessed of sufficient judgment to justify the jury in finding that she was guilty of contributory negligence. R. C. Belk, the father of Myra Morice Belk, testified that Myra Morice had just completed the fifth grade in school, that she was an ordinary child, and that she was not above the average in intelligence. Mrs. Belk testified that Myra Morice was a fair student in school, that she was helpful about the home, and that she was learning to cook.

In the very recent case of Johnson v. Howell, Miss., 56 So.(2d) 491, 492, this Court, in discussing the question of contributory negligence in the case of a minor between the ages of seven and fourteen years said: ''Such a child is prima facie presumed not to be possessed of a sufficient discretion to make him guilty of contributory negligence in failing to exercise due care for his own safety. This presumption may be overcome by proof, in which event it becomes a question of fact for the jury, but such proof must show the exceptional capacity of the child and his possession of the faculty of judgment in such degree as removes him from the class of infants presumptively held incapable of exercising discretion. Potera v. City of Brookhaven, 95 Miss. 774, 49 So. 617; Hines v. Moore, 124 Miss. 500, 87 So. 1; City of Vicksburg v. McLain, 67 Miss. 4, 6 So. 774.''

The above-mentioned instruction was erroneous for the further reason that it authorized the jury to find as a fact that Myra Morice Belk's presence upon the left front fender of the automobile interfered with Mrs. Rosamond's view of the roadway ahead of her, or with Mrs. Rosamond's control over the driving mechanism of the automobile, notwithstanding the fact that

Mrs. Rosamond had testified that the presence of the children on the front fender of the automobile did not obstruct her view in any manner, and there is no proof in the record to show that the presence of Myra Morice Belk on the front fender of the automobile interfered in any manner with Mrs. Rosamond's control over the driving mechanism of the automobile.

This Court has held in numerous cases that it is error for the court to grant an instruction which has no substantial support in the evidence. Kneale v. Lopez & Dukate, 93 Miss. 201, 46 So. 715; Interstate Life & Accident Co. v. Cooley, 150 Miss. 502, 117 So. 267; Williams v. City of Gulfport, 163 Miss. 334, 141 So. 288; J. W. Sanders Cotton Mill, Inc., v. Moody, 189 Miss. 284, 195 So. 683; Poteete v. City of Water Valley, 207 Miss. 173, 42 So.(2d) 112; Gulf, Moble & Ohio R. Co. v. Smith, 210 Miss. 768, 50 So.(2d) 899. ''An instruction not based on the evidence is erroneous in that it introduces before the jury facts not presented thereby, and is well calculated to induce them to suppose that such state of facts in the opinion of the court is possible under the evidence and may be considered by them.'' 53 Am.Jur. p. 455, Trial, par. 579.

The defendant's instruction No. 11 and the defendants' instruction No. 12 were likewise erroneous for the reason that both instructions were based upon the assumption that the proof was sufficient to justify the jury in finding that Myra Morice Belk was a child of exceptional capacity and possessed of sufficient discretion to be guilty of contributory negligence. Instruction No. 12 was erroneous for the additional reason that the instruction authorized the jury to find as a fact that Myra Morice Belk's presence upon the left front fender of the automobile prevented Mrs. Rosamond from seeing the parked car on the bridge, when Mrs. Rosamond herself had testified that the presence of the children on the fenders of her automobile did not obstruct her view in any manner.

The errors pointed out in the above-mentioned instructions are errors which were calculated to mislead the jury as to the liability of both Mrs. Rosamond and the Wileys. The instructions were predicated upon assumed facts which found no basis of support in the testimony of the witnesses. The defendants' instruction No. 5 was especially prejudicial for the reason that it undertook to fix the responsibility for the accident upon the minor child, Myra Morice Belk, who was riding on the fender of the automobile with Mrs. Rosamond's permission, and who had no control over the mechanical operation of the automobile, instead of the driver of the automobile who did have control of the mechanical operation of the automobile and who was charged with the duty of maintaining a proper lookout and avoiding a collision with other vehicles on the highway. The errors in the above-mentioned instructions were of such serious nature as would justify this Court in reversing the case if there were no other errors in the record.

The attorneys for the appellees contend that, insofar as the Wileys are concerned, the proof was not sufficient to warrant a jury in returning a verdict against them in any event, and that the judgment of the lower court should be permitted to stand as to them. They point out that the testimony of the witnesses shows that the bridge over the Big Black river was almost perfectly straight; and they say that if Mrs. Rosamond had been watching the road she could have seen the parked car before striking it. They point out that there was 13 feet 3 inches of space left for Mrs. Rosamond to use in passing the parked car; and they say that the Wileys should not be charged with notice that the driver of an automobile proceeding westwardly over the bridge might leave the north lane of travel in broad open daylight and run into the front end of an automobile parked on the south side of the bridge.

Section 8215, Code of 1942, prohibits any person from stopping, parking, or leaving standing any motor vehicle, whether attended or unattended, upon the paved or

improved or main traveled part of the highway, when it is practical to stop, park, or to leave such vehicle off such part of the highway; and the statute provides further that in every event a clear and unobstructed width of at least twenty feet of such part of the highway opposite such standing vehicle shall be left for the free passage of other vehicles. The only exception to the statute is that it shall not apply to the driver of any vehicle which is disabled while on the paved or improved or main traveled portion of the highway in such manner and to such extent that it is impossible to avoid stopping and temporarily leaving such disabled vehicle in such position.

Section 8217, Code of 1942, provides that no person shall stop, or park a vehicle upon any bridge or other elevated structure upon a highway, except when necessary to avoid conflict with other traffic or in compliance with the direction of a police officer or traffic control device.

Statutes similar to the above-mentioned statutes have been adopted in practically all of the American states. They have been enacted for the purpose of improving the safety of travel on public highways and reducing the number of accidents which result from the stopping and parking of vehicles on the public highways. When the Legislature has said that there shall be a clear and unobstructed width of at least 20 feet of the main traveled portion of the highway for the free passage of vehicles, and that an automobile shall not be parked upon a bridge, it cannot be reasonably contended that the parking of an automobile upon a bridge 19 feet 3 inches in width and leaving the car unattended for a period of eleven hours did not constitute an act of negligence.

The question then arises, was the parking of the automobile on the bridge a proximate contributing cause of the injuries suffered by Myra Morice Belk, and did the parking of the automobile on the bridge create a legal liability against the Wileys for damages on account of said injuries? In the case of Cumberland Tel. & Tel.

Co. v. Woodham, 99 Miss. 318, 54 So. 890, 891, the Court said: "Without attempting to define proximate cause in such terms as will be applicable to all states of fact— for to do so is practically impossible—it will be sufficient to say that the negligent act of a person, resulting in injury, is the proximate cause thereof, and creates liability therefor, when the act is of such character that, by the usual course of events, some injury, not necessarily the particular injury or injury received in the particular manner complained of, would result therefrom, provided the attendant circumstances are such that an ordinarily prudent man ought reasonably to have anticipated that some injury would probably result from the act done. In order that a person may be liable for damages resulting from his negligence, it is not necessary that his negligence should have been the sole cause of the injury. His negligence may be the proximate cause, where it concurs with one or more causes in producing an injury, and, although the author or authors of such cause or causes may also be liable therefor. 29 Cyc. 492-496, inclusive, and authorities there cited. 'If a defendant is negligent, and this negligence combines with that of another, or with any other independent intervening cause, he is liable, although his negligence was not the sole negligence, or the sole proximate cause, and although his negligence, without such other independent intervening cause, would not have produced the injury.' Susie B. Harrison v. Kansas City Electric Light Co., 195 Mo. 606, 93 S.W. 951, 7 L.R.A., N.S., 293.''

We think that another jury under proper instructions of the Court should be permitted to determine whether Frank Wiley's parking of the automobile upon the bridge, and leaving it there unattended for a period of eleven hours, was not a proximate contributing cause of the injuries complained of in the plaintiff's declaration. As we have already stated there were numerous errors in the instructions granted by the court to the defendants, and a new trial should be granted both as to Mrs. Rosamond and as to the Wileys.

We do not think, however, that the evidence in this case is such as to justify the infliction of punitive damages. Punitive damages are ordinarily recoverable only in cases where the negligence is so gross as to indicate reckless or wanton disregard of the safety of others. We do not think that the conduct of Mrs. Rosamond indicates any willful or wanton disregard for the safety of Myra Morice Belk or the other children whom she had permitted to ride upon the front fenders of the automobile that she was driving. Her own child, Baby Linda Rosamond, was seated on the left front fender behind Myra Morice Belk at the time of the collision. Mrs. Rosamond's negligence consisted of a failure to exercise due care in the operation of the automobile, a failure to keep a proper lookout, a failure to keep the automobile which she was driving on the right side of the road, a failure to see the parked car that was plainly visible for a distance of several hundred feet, a failure to appreciate the danger of the position of the children on the front fenders of the automobile. Her negligence may have been gross negligence but it was not willful; it was not wanton; and it was not such as to indicate an utter disregard for the safety of Myra Morice Belk or the other children who were riding on the fenders of the car with her.

Neither do we think that the negligence of Frank Wiley, Jr., in leaving the automobile parked on the bridge, under the circumstances disclosed by the record in this case, constituted such gross negligence, or such willful or wanton disregard for the safety of others, as would justify the infliction of punitive damages upon him.

The court therefore committed no error in sustaining the motion of all of the defendants for a directed verdict on the question of punitive damages.

For the reasons set forth above the judgment of the lower court is reversed and the cause remanded for a new trial.

Reversed and remanded.

Alexander, Hall, Lee and Arrington, JJ., concur.