BRENT *v.* HEATH

No. 41036 February 23, 1959 109 So. 2d 314

*Butler, Snow, O'Mara, Stevens & Cannada, Pierce & Waller,* Jackson, for appellant.

*Heidelberg, Woodliff, Castle & Franks,* Jackson, for appellee.

ROBERDS, P. J.

This is a suit to recover damages for personal injuries resulting from a motor vehicle collision. Brent, the appellant, brought the suit against Heath, the appellee. There was a jury verdict for Heath and Brent appealed. He assigns two errors which we will discuss later. There were, in fact, two collisions and it will be necessary to set out the essential facts as to both accidents in order to understand the issues involved.

About five o'clock in the afternoon of December 17, 1953, Luther Stanford was driving a Chevrolet automobile along Highway No. 51 about three miles north of Canton, Mississippi. He had one passenger, Susie Mae Nickson. The highway was a paved highway twenty feet wide with shoulders of about thirteen feet on either side of the concrete. The road runs generally north and south. Coming into Highway 51 from the east was a graveled county road. Extending from that highway on the west was a private road leading to the home of Henry Brown.

An unknown automobile was following the Stanford car. Following the unknown automobile was a car being driven by Heath. Mrs. Heath was in the car with him. The three cars—the Stanford car, the unknown car, and the Heath car—were all traveling north on the east side of the highway. As the cars approached the point where the field road to the west intersects the concrete, the unknown car pulled into the left on the west lane and passed the Stanford car. Heath also undertook to do that and at that time Stanford turned his car across the west lane of the highway in an effort to get onto the field road leading to Brown's house. There is a dispute in the testimony as to whether Stanford gave any signal that he was fixing to turn to the left to cross the road. He and the oc-

cupant of his car said he did. Heath and Mrs. Heath said he did not. Mr. and Mrs. Heath testified that Heath blew his horn as a signal to Stanford he was going to pass. Stanford denied that. At any rate, the left front of the Stanford car struck the right front of the Heath car. The Heath car ran off the concrete to the west and stopped on the shoulder on the west side of the highway. The Stanford car stopped upon the concrete in the west lane and extended about five feet over the concrete with the front of the car pointing to the northwest. Mr. Heath got out of his car, leaving Mrs. Heath therein and he, Heath, went north about 350 feet for the purpose of warning motorists of the location of the Stanford car partly upon the west lane of the road, so as to avoid the possibility of other accidents. The Stanford car was disabled. This constitutes what may be termed accident No. 1.

Heath did flag the oncoming southbound vehicles warning them of the danger. It appears that a number of them did come that way and passed the Stanford car by using the east lane of the highway. One of the parties approaching from the north in an automobile was Harold Dixon, Jr. Brent was in the car with Dixon. Dixon did not heed the signal given by Heath. The testimony is that Dixon was driving between 70 and 90 miles per hour. He pulled into the east lane as he passed the point where the Stanford car was resting, partly on the highway on the west. Dixon appears to have lost control of his car and ran into a northbound motor truck some 600 feet south of the point of the accident to the Stanford car. Also, Dixon and Brent were thrown from the Dixon car. Dixon was killed and Brent was injured.

Brent, for consideration of $3,500, settled all claims against Dixon and the owner of the automobile which Dixon was driving.

Brent brought this suit against Heath on the theory, first, that Heath, after the accident, wrongfully or negli-

gently forced or compelled Stanford to let his automobile remain, in the position as heretofore stated, on the public highway, and second, that Heath was under duty to remove the Stanford car and failed to do so.

 ■ Under the first contention—that is that Heath forced Stanford to leave the car where it settled—Heath says that he did not do that as a matter of fact; that all he did was to suggest to him that the car should be left where it settled until the police came. That question of fact was submitted to the jury in an instruction. Stanford and the occupant of his car did testify that Heath, using an oath, told Stanford to leave the car where it had settled. On the other hand, Heath says that all he did was to suggest to Stanford that this would be the proper thing to do. Heath testified, ''He begged me not to call the law. I told him I would have to. I didn't want him to move the car. I said the best thing to do is just to let the car set there, I am going to do that with mine.'' He denied that he uttered any oath or made any threat. Mrs. Heath testified to the same effect. This action, as evidenced by the testimony of Heath was in no way sufficient to compel or force Stanford to let his car remain upon the road, assuming but not deciding, that Heath had any right or power whatever to direct the actions of Stanford as to the removal of the automobile. The court granted Brent an instruction submitting the question whether Heath ''forced'' Stanford to let the car so remain.

Brent relies upon Kirkpatrick v. Love, 220 Miss. 174, 70 So. 2d 321. In that case Love, a policeman, ordered Kirkpatrick to drive his truck onto the sloping shoulders of a highway, which Kirkpatrick did, causing the damage. The Court in that case said it was a question for the jury as to whether Love did order the driver of the truck to pull onto the shoulder and was negligent in so doing, and whether such negligence, if any, was a proximate contributing cause to the overturning of the truck causing the

consequent damage. In this case the question of whether Heath ordered Stanford to leave the car in the position where it came to rest after the accident was submitted to the jury and the jury returned a verdict for Heath.

██ █ Another ground of the suit is the claim that Heath made no effort and took no action to remove the Stanford car from the highway. The lower court instructed the jury that Heath was under no such duty. Brent, on this appeal, complains of that action. We know of no rule of law or imposition of duty on the part of Heath under the circumstances of this case to remove or cause to be removed, the Stanford car from the highway. In addition to this, the testimony shows that there was an effort by those who appeared and stopped at the scene to remove the Stanford car from the highway, but that they were unable to do so. Susie Mae Nickson, occupant of the Stanford car, was asked: ''Q. Didn't you also say that after Mr. Heath told him not to move the car that you attempted to move it and you pushed on it? A. We pushed on it. It was too heavy. Q. That is when you all tried to push it off? A. Yes, sir.'' It might be noted here that four men tried to push the car and were unable to do it. Mrs. Heath said that after Mr. Heath left to flag oncoming cars somebody tried to push the Stanford car off the road but were unable to do so.

Section 8215, Miss. Code 1942, Anno., prohibits the ''driver'' of an automobile parking the car at certain places under the conditions named in the section. But it also provides: ''This section shall not apply to the driver of any vehicle which is disabled while on the paved or improved or main traveled portion of a highway in such manner and to such extent that it is impossible to avoid stopping and temporarily leaving such disabled vehicle in such position.'' In Belk v. Rosamond, 213 Miss. 633, 57 So. 2d 461, this Court said: ''In case a motor vehicle is disabled on a public highway so that it

·cannot be moved under its own power, if it can be removed ·from the traveled portion of the highway, it is the duty of the *driver* to so remove it.''

In Prosser, Law of Torts, at page 182, it is said: ''For an omission to act, there is no liability unless there is some definite relation between the parties which is re-·garded as imposing a duty to act.'' It might be observed here that the instructions granted in this case submitted to the jury for determination whether Heath was negligent and such negligence contributed to cause the wreck with the Stanford automobile and appellee. The jury found that Heath was not negligent.

Finally it may be observed that in one instruction the court informed the jury that Brent had settled all liability against Dixon and the owner of the automobile which he was driving for $3,500 and that before the jury in this case could find for Brent, it would have to also find that the money damage suffered by Brent for his injuries exceeded the $3,500. The verdict of the jury in this case might have been grounded upon the idea that Brent had been compensated for his injuries.

Affirmed.

*Hall, Lee, Holmes* and *Ethridge, JJ.,* concur.