SOUTHERN RAILROAD COMPANY *v.* ELDER.

[80 South. 333, Division A.]

CARRIERS. *Carriage of live stock. Conversion.* ' *Evidence.*

　Under the evidence in this case, which was a suit for the conversion of a carload of cattle by a carrier, the court held that the verdict of the jury was clearly contrary to the overwhelming weight of testimony and was manifestly wrong.

APPEAL from the circuit court of Tishomingo county. Hon. CLAUDE CLAYTON, Judge.

Suit by W. C. Elder against the Southern Railway Co. From a judgment for plaintiff, defendant appeals. The facts are fully stated in the opinion of the court.

*Bennett & Clark* and *Earl King,* for appellant.

*Cunningham & Cunninghma,* for appellee.　　　·

HOLDEN, J., delivered the opinion of the court.

The appellee, W. C. Elder, sued and obtained judgment for nine hundred dollars, against the Southern Railway Company for the conversion of a car of cattle, which he claimed to have loaded and delivered to the appellant railway company at Huntsville, Ala. The appellant railway company denied having received the car of cattle and disputed the claim with an abundance of evidence at the trial. The claim of the appellee depended entirely upon his own testimony, which the jury believed in preference to the great preponderance of evidence offered by the appellant railway company. After a most careful consideration of the testimony introduced by the appellee and appellant, it is our opinion that the verdict of the jury was clearly contrary to the overwhelming weight of the testimony in the case and seems manifestly wrong.　　　·

It appears from the testimony of the plaintiff that he was a cattle buyer in Huntsville, Ala., operating in

the name of some other person; he claims to have loaded the cattle in a car and turned them over to some person who was acting as agent of the railway company at Huntsville; he did not identify the person whom he claimed was acting as the agent and received the car of cattle, but said that this same man had accepted cattle for shipment from him before that time for the railway company. He testified that when the car was loaded he gave some directions to appellant's supposed agent with reference to the shipment, but he did not ask for or receive a bill of lading for the car. He says that he had a short time in which to catch another train which prevented him from calling for the bill of lading. It appears nearly conclusively, however, that no such train was to leave Huntsville at the time the appellee claimed he was trying to catch it. Appellee filed several declarations and amended declarations in the case, in some of which he alleged that he instructed the agent that his cattle were to be shipped to one firm in St. Louis, and in another amended declaration alleges that he instructed that the cattle be shipped to a different firm, and he finally testified that he instructed that they be shipped to still a different firm in East St. Louis. These glaring contradictions are apparent in this case. Appellee received no bill of lading, gave no notice as to the conditions of the contract to govern the shipping with reference to value, route, food and water, etc. He made no inquiry of the appellant railway company concerning his cattle until after two or three weeks had passed. It also appears that he made no inquiry with reference to his alleged car of cattle in St. Louis for nearly two months after the shipment, although he had gone to St. Louis in the meantime on other business.

It was shown by credible and undisputed testimony that the appellee had thirty-five head of cattle in a pasture near Huntsville, and that on the date of the

shipment claimed by him he had sold this thirty-five head of cattle to a Mr. Coil and received a check for four hundred and ninety-five dollars in payment for them, and this check was introduced in evidence. Appellee, Elder, testified that all his cattle were in this pasture near Huntsville before the date of the alleged shipment by him. This pasture was owned by a Mr. Lathan, who testified that Elder never at any time had but the thirty-five head of cattle in his pasture which he drove away from the pasture on the date that Coil bought the thirty-five head and shipped them from Huntsville over the appellant railway line. The evidence shows that Elder told Coil that the thirty-five head of cattle he sold him were all the cattle that he had and that he was going to Wheeler, Miss., his home. There seems to be no dispute as to Coil having purchased from and paid Elder for the thirty-five head of cattle that he shipped on the date appellee claims to have shipped his car of cattle. But the appellee claims that he had some forty-two head of cattle more than the thirty-five head in Lathan's pasture, notwithstanding the contrary proof that he had sold the thirty-five head to Coil which was all that he had in Lathan's pasture. The appellant railway company presented credible proof that no such car of cattle was received from Elder by any of its agents, and that they could not and would not accept any carload of live stock for shipment unless the shipper appeared and signed his contract and received his bill of lading. The record shows, at least inferentially, that it would have been a most remarkable and unusual procedure on the part of the railroad company to have accepted and moved a car without first having a contract executed between the shipper and the company, and also it being necessary in order that a waybill could be issued which is to direct the movement of the car in the hands of the trainmen. The appellee testified that he did not tell the agent what kind of a contract he wanted, but that

he would come back and get the contract. He did not come back for it. It appears from the record that appellee Elder, had made no charge that Coil stole his car of cattle. He admits that Coil bought from him the thirty-five head which Coil shipped on that date. Coil testified that there were no other cattle in the railroad shipping pen that day except the thirty-five head which he purchased from Elder, and his own. Elder was seen around the pens at the time that Coil loaded and shipped the cattle bought from Elder along with the other cattle belonging to Coil, which he also shipped at the same time. The testimony of appellee upon which his case must depend was disputed by competent and reasonable testimony of the railway company in all of its material parts.

While we do not say that the testimony of the appellee is unbelievable or palpably false, yet we are persuaded that in many respects it is unreasonable and unconvincing to the ordinary mind. The appellee's case must be viewed as a remarkable story, coming, as it does, from an experienced cattle shipper. It is unsupported by any other material fact or circumstance in the case. On the other hand, the facts and circumstances in the proof animate or inanimate, bear strongly against his unreasonable story. His conduct and actions speak loudly against his claim of loss.

We think the judgment of the lower court should be reversed, and a new trial on the facts be had before another jury.

In *Fore* v. *A. & V. Ry.*, 87 Miss. 211, this court said, on page 218, 39 So. 493, 494:

"Occasionally it is the duty of a trial court to set aside a verdict and grant a new trial, where the judge is of the opinion that the finding of the jury is clearly against the great preponderance of the evidence."

We think this is such "occasional" case, and we may add is rare and exceptional.

*Reversed and remanded.*