THOMAS *v.* STATE.

[92 South. 225. No. 22255.]

CRIMINAL LAW. *Supreme court will not disturb verdict based on competent evidence unless the testimony is unreasonable or highly improbable.*

This court will not disturb the finding of fact by a jury when based upon convincing competent evidence except in exceedingly rare cases, where the testimony is unreasonable, and so highly improbable as to raise extreme doubt, and become repulsive to the reasoning of an ordinary mind.

APPEAL from circuit court of Hinds county.

HON. W. H. POTTER, Judge.

Henry Thomas was convicted of murder, and he appeals. Reversed and remanded.

*M. Ney Williams*, for appellant.

*Frank Roberson*, attorney-general, for the state.

HOLDEN, J., delivered the opinion of the court.

Henry Thomas was convicted of the murder of Mr. F. R. Snow, and sentenced to the penitentiary for life, from which judgment he appeals.

One morning in May, 1921, the dead body of Mr. Snow was found lying near the front gate of his residence in Hinds county; he had been killed by a crushing blow on the back of his head. Mr. Snow was a good citizen, and very popular in the community, and his murder aroused the people to great indignation. Many persons were arrested and placed in jail on suspicion; among them was the appellant. On the following day, the record discloses, a mob took the appellant into the woods, and whipped him very severely in an effort to obtain a confession of his guilt, but he at all times protested his innocence. Investigating parties searched from house to house in the community seeking information that would lead to finding the person or persons who committed the outrageous crime, but for several days no reliable clew could be obtained as to the guilty party.

About 10 days after the commission of the crime the preliminary trial of appellant took place, and for the first time a 14 year old negro girl by the name of Elmire Ross stated that on the evening of the murder, between sundown and dark, while she was setting out cabbage plants in the garden of her grandmother, a place about one-half mile from the residence of Mr. Snow, she looked down into the woods, and there, about 100 yards from where she was standing, she saw the appellant, Thomas, pick up the dead

body of Mr. Snow, and place it upon his shoulders, and walk in some direction into the woods. She said that she recognized the appellant, and also Mr. Snow, at that time of the day and at that distance from her in the woods. She said that the sight did not disturb her; she told no one in the house or elsewhere about it; and that she recognized the face of appellant, and also that of the corpse. The credible evidence shows that, when the searching parties came to the house of this girl on the day after the murder, and asked her if she knew anything about it, she said that she knew nothing of it; that on the evening Mr. Snow was killed she was not at home, but "had gone plum hunting." She was not only silent, but denied any knowledge of the crime until 10 days afterwards, at the preliminary hearing, when she made the remarkable statement of seeing appellant deliberately place the dead body upon his shoulders and walk in view of the farm house into the woods. After she told this story examination of the grounds and woods at the point where she said she saw appellant place the body upon his shoulders was made by the officers, and they found no signs at or near the spot which would indicate that a murder had been committed there.

The conviction of appellant rests solely upon the testimony of this negro girl. There is no other substantial proof in the case which connects the appellant with the murder. No motive for the killing was shown; but, on the other hand, the testimony shows that the relations for several years between the appellant and the deceased were friendly, and that they were not only on good terms, but they had assisted each other in the past as good neighbors for many years. No plausible reason appears in this record that could have been a cause for the appellant to have murdered Mr. Snow. The physical facts and circumstances of the case negatively indicate that Mr. Snow was not killed in the woods, but it appears more reasonable that he was struck down by someone at the gate near his residence where found, while he still had in his hands the plow lines attached to his mule standing close by.

More than this, the story of this young negro girl seems doubtful with reference to whether she could see and recognize the faces of two men 100 yards away in the woods between sundown and dark. No one else saw what she said she saw. There were no signs of a scuffle nor blood stains upon the ground at the spot where she said she saw appellant take up the dead body. She did not know in which direction appellant went with the body. It seems to us very remarkable that a sane negro would deliberately murder his white friend and benefactor down in the woods, and then take the body upon his shoulders and parade his murderous conduct before the people in houses near by. There appears to be no reason for the killing to have taken place down in the woods rather than up at the front gate of the residence, where the body and cap were found.

Besides this, this negro girl on the same day after the murder was discovered emphatically denied that she knew anything about it, and was away from home plum hunting. She did not tell any of her family about what she saw in the woods; it was of such little concern to her that it did not even disturb her in setting out cabbage plants after sundown. She first stated that it was 300 yards away from her. It would appear more natural for her to have become aroused and excited at the sight of a man placing a dead body upon his shoulders, and would have mentioned it to her kinsman in the house, but she did not do this, nor tell any one until 10 days afterwards.

Her relatives were in jail at the time as suspects; there were two white persons also under grave suspicion of having committed the crime. It seems from the record that the conduct of this girl in secreting the information she said she had, or the motive that moved her to suddenly tell just enough to put the crime upon appellant, in a community where the excitement was high, is rather mysterious, and to say the least of it, is not satisfactorily explained in this case.

There are other facts and circumstances in the case which we shall not now detail that show the unreasonable-

ness of the testimony of this negro girl which alone supports the verdict of guilty against the appellant.

We are asked on this appeal to reverse the judgment of the lower court on the facts; that is, that the testimony is insufficient to sustain the verdict, in that it is unreasonable, unbelievable, and manifestly false. Ordinarily this court does not disturb the finding of fact by a jury, nor review such finding except to determine whether or not there is sufficient evidence, if believed by the jury, to support the verdict. And, when we have found that the action of the jury was based upon convincing competent evidence, regardless of the nature or amount of it, the verdict will stand, because under our system the jury are the sole judges of the weight and credibility of the evidence, and are the exclusive triers of fact in every case.

However, an exception to this rule may arise in exceedingly rare cases where, from the whole circumstances, the testimony is contradictory and unreasonable, and so highly improbable that the truth of it becomes so extremely doubtful that it is repulsive to the reasoning of the ordinary mind. In such a case we think it proper to award a new trial on the facts, and let another jury have an opportunity to weigh and judge the testimony at another time, and under different circumstances, when the mistake of the first jury may be corrected, if a mistake has been made, and justice in the case, which the state desires as well as the accused, can be duly awarded.

This court in *Southern Ry. Co.* v. *Elder*, 118 Miss. 856, 80 So. 333, said: "While we do not say that the testimony of the appellee is unbelievable or palpably false, yet we are persuaded that in many respects it is unreasonable and unconvincing to the ordinary mind. . . . It is unsupported by any other material fact or circumstance in the case. On the other hand, the facts and circumstances in the proof animate and inanimate, bear strongly against his unreasonable story."

It is also said in *Mobile & Ohio R. R. Co.* v. *Bennett* (Miss.) 90 So. 113: "This court is always reluctant to re-

verse on a finding of fact by a jury, and it is indeed a rare case where it is done, but we think the verdict reached by the jury in this case is contrary to the overwhelming weight of convincing evidence, and for this reason the judgment is reversed, and the case remanded. *Clark* v. *Moyse,* 48 So. 721; *McFadden* v. *Buckley,* 98 Miss. 28, 53 So. 351; *Fore* v. *Railway,* 87 Miss. 218, 39 So. 493, 600; *McQueen* v. *Bostwick,* 12 Smedes & M. 604; *Sims* v. *McIntyre,* 8 Smedes & M. 327; *Barbee* v. *Reese,* 60 Miss. 906."

It is our judgment that this is the character of exceptional case where the finding of fact by the jury should be set aside and a new trial granted. Therefore the judgment of the lower court is reversed, and the case remanded for a new trial.

*Reversed and remanded.*