GRIFFIS, P.J.,
for the Court:
¶ 1. Brandon Lockhart filed a civil complaint against Harrison Banks for damages for battery. The jury returned a verdict in favor of Lockhart and awarded $300,000 in compensatory damages and $50,000 in punitive damages. On appeal, Banks argues that: (1) the jury’s verdict is against the overwhelming weight of the evidence; (2) the trial court erred when it allowed the jury to consider punitive damages; and (3) the trial court erred when it did not grant a remittitur on compensatory and punitive damages. We find no error and affirm.
FACTS
¶ 2. Lockhart and his friend, Lindsay Gibson, went out in Oxford for drinks the night of July 17, 2009. The pair visited several bars that evening. While at the Library Bar & Grill, Lockhart and Gibson encountered Banks. For reasons unknown, Gibson slapped Banks several times. A brief altercation between Banks and Gibson ensued, but the two were quickly separated. After this altercation, Lockhart and Gibson left the Library and headed home.
¶ 3. While walking in an alleyway near Taylor’s Pub, another altercation between Gibson and a “third party” occurred. Dur *372 ing this altercation the third party-knocked Gibson to the ground. Lockhart knelt down to assist Gibson and was struck in the face, which knocked him to the ground as well. Lockhart testified at trial that when he looked up, he saw Banks fleeing the scene. However, Banks testified that he was not present in the alleyway and did not see Lockhart or Gibson after they left the Library.
¶ 4. After this second altercation, the owner of Taylor’s Pub came out of the bar to assist the injured Lockhart and Gibson until police officers arrived. Oxford Police Officers David Aim and Hildon Sessums arrived shortly thereafter. The officers assessed the scene and inquired about the altercation. Once this process was complete, and upon seeing the injury to Lock-hart’s face, the officers convinced Lockhart to go to the hospital. Lockhart testified at trial that several hospital exams showed that the blow shattered a sinus bone in his face. Furthermore, Lockhart testified he underwent several steroid injections and one invasive surgery to remove scar tissue from the side of his face, with the possibility of further treatments.
¶ 5. Eventually, Lockhart filed suit against Banks for damages stemming from the battery that occurred outside of Taylor’s Pub. After a brief jury trial, the jury reached a verdict in favor of Lockhart and awarded him $300,000 in compensatory damages and $50,000 in punitive damages. Banks filed a motion for a judgment notwithstanding a verdict or, in the alternative, a new trial or, in the alternative, a motion for remittitur, all of which were denied. Banks now appeals.
ANALYSIS

1. Whether the jury’s verdict is against the overwhelming weight of the evidence.

¶ 6. Banks’s first assignment of error is that the jury’s verdict is against the overwhelming weight of the evidence, that Lockhart’s testimony was not credible, and that the jury’s verdict was clearly the result of bias, passion, or prejudice.
¶ 7. In Starcher v. Byrne, 687 So.2d 737, 739 (Miss.1997) (citations omitted), the supreme court held:
The standard of review for jury verdicts in this state is well established. Once the jury has returned a verdict in a civil case, we are not at liberty to direct that judgment be entered contrary to that verdict short of a conclusion on our part that, given the evidence as a whole, taken in the light most favorable to the verdict, no reasonable, hypothetical juror could have found as the jury found.
¶ 8. The jury found Banks liable for the battery committed against Lock-hart and awarded compensatory and punitive damages to Lockhart. To determine whether the verdict was contrary to the overwhelming weight of the evidence, we must examine the elements of the intentional tort of battery and whether the evidence supports the verdict. The elements of the intentional tort of battery require:
An assault occurs where a person “(1) acts intending to cause a harmful or offensive contact with the person of the other or a third person, or an imminent apprehension of such a contact, and (2) the other is thereby put in such imminent apprehension.” A battery goes one step beyond an assault in that a harmful contact actually occurs.
Whitten v. Cox, 799 So.2d 1, 8 (¶ 7) (Miss.2000) (citations omitted)(quoting Webb v. Jackson, 583 So.2d 946, 950-51 (Miss.1991)). A battery, therefore, occurs when a person intends to cause a harmful or offensive contact to another person and such contact actually occurs.
*373 ¶ 9. To determine whether the verdict was against the overwhelming weight of the evidence, we look at the facts in the light most favorable to the verdict. Bush v. State, 895 So.2d 836, 844 (¶ 18) (Miss.2005). It is undisputed in the record that Lockhart suffered a harmful or offensive contact the night of July 17, 2009. Thus, the central elements of battery that Lock-hart had to prove to the jury were that: (1) Banks intended to cause a harmful or offensive contact, and (2) Banks was responsible for the harmful or offensive contact.
¶ 10. Both parties agree that at least one altercation took place that evening in the Library between Gibson and Banks. While Banks claims he was not a party, it is undisputed that a second altercation took place in the alleyway near Taylor’s Pub, where Lockhart was struck in the face. Lockhart claims that after he was struck, he observed Banks fleeing from the scene. Additionally, the testimonies of Officers Aim and Sessums were consistent that an altercation took place in the alleyway between Gibson and another party, and that while assisting Gibson after he was knocked to the ground, Lockhart was struck in the face. Banks’s only response to these assertions is that he simply was not present and, therefore, did not strike Lockhart. A reasonable, hypothetical juror could make inferences and conclude that, based on the testimony of the witnesses and the fact that a previous altercation had occurred, Banks was a party to the second altercation in the alleyway. As for Banks’s intent, a reasonable, hypothetical juror could have concluded that, based on Banks’s own statements, involvement in the previous altercation, and involvement in the alleyway altercation, he intended to cause a harmful or offensive contact when he struck Lockhart. Given this scenario, we cannot conclude that the verdict was contrary to the overwhelming weight of the evidence.
 ¶ 11. Next, Banks argues that Lockhart’s testimony lacked credibility. Determining the credibility of a witness or the weight of their testimony is not the province of this Court. “This Court, of course, is not the jury. The weight and credibility of the witnesses ... was for the jury, who were free to accept or reject whatever part of their testimony they chose.” Fleming v. Floyd, 969 So.2d 868, 878 (¶ 25) (Miss.2007) (citation omitted). The jury, in this case, determined that Lockhart was a more credible witness than Banks. Furthermore, when applying the standard of review to jury verdicts in civil cases, “[bjecause of the jury verdict in favor of the appellee, this Court resolves all conflicts in the evidence in his favor.” Bobby Kitchens, Inc. v. Miss. Ins. Guar. Ass’n, 560 So.2d 129, 131 (Miss.1989).
¶ 12. Banks makes the assertion that Lockhart’s testimony is not credible because he lied to Officers Sessums and Aim about not knowing the name of his alleged assailant. In fact, Banks testified that Lockhart knew who he was and the two men were, at a minimum, acquaintances. Additionally, at trial Lockhart testified that all along he knew the name of the person who struck him in the face. However, Lockhart’s justification for this discrepancy is that he did not know how significant his injuries were that night and did not want to “tattle” on Banks unnecessarily. While Banks’s argument is well taken that a credibility issue exists with Lockhart’s testimony, such an issue is for the jury to consider, not this Court. The jury found Lockhart to be a credible witness and believed his testimony. Based on the standard of review, this Court must show deference to the jury’s determination and resolve any evidentiary conflicts in *374 favor of the appellee, as we assume this is the conclusion the jury made as well. Id.
¶ 13. Finally, Banks claims that the jury based the verdict on bias, passion, and prejudice, stemming from the following colloquy during Banks’s cross-examination:
Q: You have given a pretty detailed account various times you testified in this case whether a deposition or criminal case or today regarding what you did, when you left the bar, who you left with but your memory regarding that time is not too good is it?
A: I’m sorry, I don’t follow.
Q: Well, one thing that I have asked you before you ultimately would end up that night at your girlfriend’s house?
A: I stayed with my girlfriend that evening.
Q: And you remembered all these names and times and places but you couldn’t tell me who your girlfriend was; correct?
A: Yes, sir, I did struggle with that.
Q: You told me you couldn’t put a face to her?
A: I believe I said I couldn’t put a name with the face.
Q: Well, I have a copy of your deposition. Let me show you the question I asked you. Page 20, line 20. Your answer, and then I went to my girlfriend’s house at the time and I asked who is that and what was your answer?
A: I can not put a face with her name right now.
Q: I’m sorry can you read that again?
A: I can not put a face with her name right now.
Q: Are you reading that correctly?
A: I can not put a face with her right now.
Q: Thank you. The deposition went on for a while and you couldn’t recall her name; correct?
A: Yes, sir, I eventually did. I believe.
Q: That didn’t have anything to do with your habitual mixing of Xanax and alcohol?
A: No sir.
¶ 14. Banks argues that this exchange, before an all-female jury, was prejudicial and resulted in a verdict that reflected the jury was biased. First, we note that Banks did not object during this colloquy, and no objections were made related to this testimony. Second, “the only evidence of corruption, passion, prejudice or bias on the part of the jury is an inference, if any, to be drawn from contrasting the amount of the verdict with the amount of damages.” Wal-Mart Stores, Inc. v. Frierson, 818 So.2d 1135, 1144 (¶ 21) (Miss.2002) (quoting Biloxi Elec. Co. v. Thorn, 264 So.2d 404, 406 (Miss.1972)). Lockhart stipulated that his medical expenses were $11,654.64. Banks claims that the difference between an award of $350,000 in compensatory and punitive damages and medical expenses of $11,654.64 clearly evidences bias on the part of the jury. However, medical expenses are not the only damages claimed by Lockhart. He also claims past, present, and future physical pain and suffering, and resulting mental anguish.
¶ 15. Banks’s argument of prejudice or bias is not well taken. Banks raised no objections during cross-examination regarding the allegedly prejudicial colloquy. Banks submitted no special interrogatory jury instructions regarding the specific allotment of damages. In addition, where an intentional tort is claimed, “[d'jamages are recoverable for mental anguish and suffering caused by a willful, wanton, mali *375 cious, or intentional wrong, even though no bodily injury is sustained or other pecuniary damage alleged or proved.” Whitten, 799 So.2d at 13 (¶ 25) (citation omitted).
¶ 16. It is clear from the record that Lockhart sustained an actual injury and incurred damages as a result. However, this Court cannot assume the reason for the difference between the damages claimed by Lockhart and the jury’s specific allotment of the award. As such, this Court cannot say that a reasonable juror would have concluded otherwise. Thus, taking the evidence in this matter as a whole, we find that a reasonable, hypothetical juror could have found as the jury here found. We do not consider the jury’s verdict against the overwhelming weight of the evidence and find that this issue has no merit. We find no error.

2. Whether the trial court erred when it allowed the jury to consider punitive damages.

¶ 17. Banks’s second assignment of error is that the trial court erred in allowing the jury to consider punitive damages. The supreme court has held that the standard of review for consideration of punitive damages is as follows:
When deciding whether to submit the issue of punitive damages to a trier of fact, the trial court looks at the totality of the circumstances, as revealed in the record, to determine if a reasonable, hypothetical trier of fact could find either malice or gross neglect/reckless disregard. An abuse of discretion standard is used when this Court reviews the trial court’s decision on whether a case warrants punitive damages be considered by the trier of fact.
Bradfield v. Schwartz, 936 So.2d 931, 936 (¶ 15) (Miss.2006) (internal citations omitted). Under this assignment of error, Banks asserts that Lockhart failed to “prove by clear and convincing evidence that [Banks] acted with actual malice, gross negligence which evidences a willful, wanton or reckless disregard for the safety of others, or committed actual fraud.” See Miss.Code Ann. § ll-l-65(l)(a) (Rev. 2002).
¶ 18. Whether Lockhart proved punitive damages by clear and convincing evidence has no bearing on whether the trial court erred in allowing the jury to consider punitive damages. In submitting the issue of punitive damages to the jury, the trial court concerns itself with whether the jury could find malice, gross negligence, or reckless disregard, not whether it did.
¶ 19. However, the supreme court has stated that even in situations where an assault occurred from sudden passion, malice on the part of the assailant may still be present in the case. Anderson v. Jenkins, 220 Miss. 145, 155, 70 So.2d 535, 540 (1954). Even in cases involving sudden passion, “[m]aliee may be presumed from the manner in which an assault is made when considered in the light of the surrounding circumstances as shown by all of the evidence in the case.” Id. In Anderson, the supreme court considered whether an assailant possessed malice when using a weapon to defend property. Id. While the facts in this case are different from Anderson, the presumption of malice still applies. In Anderson, the assailant fired a shotgun, twice, at a vehicle filled with teenage trespassers and one of the teens was struck in the eye with a shotgun pellet. Id. at 149-50, 70 So.2d at 537. The assailant in Anderson had the requisite intent to cause an offensive or harmful contact and that contact actually occurred. Id. at 154, 70 So.2d at 539-40. This Court cannot say that simply because fists instead of firearms were used to cause the battery here, that the supreme court’s presumption no longer applies. *376 Given the facts of this case, such a presumption can be made with respect to Banks’s intent when the jury considered punitive damages.
¶ 20. The trial court did not abuse its discretion in allowing the jury to consider the issue of punitive damages. The jury found Banks responsible for the battery to Lockhart. The jury awarded compensatory damages. Taking the totality of the circumstances, a reasonable, hypothetical trier of fact could have found that Banks acted with malice, gross negligence, or reckless disregard by striking Lockhart. We find no error.

3. Whether the trial court en~ed when it did not grant a remittitur on compensatory and punitive damages.

¶ 21. Banks’s final assignment of error is that the trial court erred in denying a motion for remittitur of the compensatory and punitive damages. In Dedeaux v. Pellerin Laundry, Inc., 947 So.2d 900, 908 (¶ 16) (Miss.2007), the supreme court held:
If the trial judge grants a motion for an additur or remittitur, such grant of an additur or remittur shall take effect only if accepted by all the parties. If all the parties do not agree to the additur or the remittitur, then each party shall have the right to either demand a new trial on damages, or appeal the order asserting an abuse of discretion on the part of the trial judge.
Also, in Pellenn Laundry the supreme court specifically addressed a trial court’s denial of an additur or remittur motion. Id. at n. 4. The supreme court noted that “[c]ertainly, on the other hand, the trial court’s denial of an additur or remittitur would be subject to appellate review via an assignment of error asserting that the jury verdict (including the verdict as to damages) was contrary to the substantial weight of the evidence.” Id.
¶ 22. Therefore, in the case before us, we apply the standard from Pellenn Laundry and review the trial court’s denial of Banks’s motion for remittitur for abuse of discretion. If the overwhelming weight of the evidence is against the verdict, then the trial court abused its discretion in denying Banks’s remittitur motion.
¶ 23. From the discussion of Banks’s first assignment of error above, a reasonable, hypothetical juror could have found as the jury here found; thus, this Court finds the overwhelming weight of the evidence is not against the verdict. Banks’s assignment of error that denying a motion for remittitur was against the overwhelming weight of the evidence is without merit. The trial court did not abuse its discretion in denying Banks’s motion for remittitur.
¶ 24. Furthermore, “[a] jury award should not be disturbed ‘unless its size, in comparison to the actual amount of damage, shocks the conscience.’ ” U.S. Fidelity and Guar. Co. of Miss. v. Martin, 998 So.2d 956, 969 (¶ 44) (Miss.2008) (quoting Entergy Miss., Inc. v. Bolden, 854 So.2d 1051, 1058 (¶ 20) (Miss.2003)). Regardless, we find that it is prudent to address, notwithstanding the trial court’s discretion, whether the award in the case before us shocks the conscience. The award of $300,000 in compensatory damages and $50,000 in punitive damages does appear rather substantial, given the totality of the case before the trial court and the record before us. However, this Court cannot say that such an award shocks the conscience, such that remittitur would have been proper.
¶ 25. Given that the trial court did not abuse its discretion in denying Banks’s motion for a remittitur and that, while significant, the award does not shock the *377 conscience, this Court finds no merit in Banks’s argument. We find no error.
¶ 26. THE JUDGMENT OF THE CIRCUIT COURT OF LAFAYETTE COUNTY IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
LEE, C.J., IRVING, P.J., BARNES, ISHEE, ROBERTS, CARLTON, MAXWELL, FAIR AND JAMES, JJ., CONCUR.